IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JESSICA P. WILLIAMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:09cv546-WC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiff Jessica P. Williams applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 *et seq*. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims. (Tr. 38-50). The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #18); Def.'s Consent to Jurisdiction (Doc. #17). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-one years old at the time of the hearing before the ALJ.  Tr. 4. The last grade Plaintiff completed in school was the seventh.  Tr. 4.  The ALJ found that Plaintiff has no past relevant work experience. Tr. 49.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of her application, August 31, 2006 (Step 1).  Tr. 43.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "post-traumatic stress disorder, major depression, and status post lacerations to neck."  Tr. 43.  The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Step 3) Tr. 45.  Next, the ALJ found that Plaintiff has the RFC to "perform unskilled medium work . . . in a setting where social interaction is casual and moderately limited."  Tr. 46-48.  Of course, because of Plaintiff's lack of any past relevant work, at step four the ALJ was unable to assess Plaintiff's RFC in the context of relevant work.  Next the ALJ found that, given Plaintiff's age, education, work experience, and RFC, and after consulting with a vocational expert, there "are jobs that exist in significant numbers in the national economy" which Plaintiff can perform.  (Step 5) Tr. 49.  The ALJ found that such occupations include: "food preparation worker," "janitor," "assembler," "housekeeper," and "cafeteria worker."  Tr. 49 & 15-16. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 31, 2006, the date the application was filed."  Tr. 50.

## IV.     PLAINTIFF'S CLAIMS

Plaintiff alleges two errors requiring reversal of the ALJ's decision: (1) "the ALJ failed to properly evaluate the medical opinion expressed by Dr. Lopez, [Plaintiff's] treating psychiatrist;" and (2) the ALJ's "RFC assessment failed to consider the impact of [Plaintiff's severe mental impairment on Plaintiff's] functional ability as required by Social Security Ruling 96-8p." Pl.'s Brief (Doc. #14) at 5-6.

## V.      DISCUSSION

### A.     The ALJ's treatment of Plaintiff's treating source opinion.

Plaintiff claims that the "ALJ failed to evaluate the medical opinions expressed by [her] treating psychiatrist." Pl.'s Brief (Doc. #14) at 6. Specifically, Plaintiff faults the ALJ for giving only "little weight" to some of the conclusions conveyed on a questionnaire completed by Dr. Lopez, while giving "substantial weight" to the assessment provided by the consultative examiner, Dr. McKeown. *Id.* at 7. Defendant contends that Dr. Lopez should not be considered Plaintiff's treating physician[5] and maintains that, even assuming such a

---

[5] Defendant asserts that Dr. Lopez is not a treating physician "because Dr. Lopez did not have a longitudinal treatment relationship with Plaintiff." Def.'s Brief (Doc. #15) at 3-4. "A treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment and evaluation, and who has had an ongoing relationship with the claimant." *Pettus v. Astrue*, 226 F. App'x 946, 949 (11th Cir. 2007). In this case, the record reveals that Dr. Lopez saw Plaintiff on four occasions between January 2007 and February 2008, (Tr. 250, 255, 187, &184), and that he rendered the opinion relied upon by Plaintiff in March of 2008 (Tr. 246-248). Dr. Lopez prescribes Plaintiff's medications and oversees her treatment. Plaintiff's relationship with Dr. Lopez is based on her need for treatment, not to "obtain a report in support of [the claim] for disability." *Pettus,* 226 F. App'x at 949. Thus, for purposes of this opinion, the Court considers Dr. Lopez Plaintiff's treating physician.

relationship, the ALJ properly rejected Dr. Lopez's opinion.

In a questionnaire completed on March 13, 2008, Dr. Lopez conveyed his judgment about Plaintiff's functional limitations across a variety of areas. Although Dr. Lopez opined only "mild" or "moderate" limitations in numerous areas, he opined Plaintiff suffers "marked"[6] limitation in her ability to do the following: "to understand, remember and carry out complex instructions;" "to maintain attention and concentration for extended periods;" "to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" "to sustain a routine without special supervision;" "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;" and "to respond to customary work pressures." Tr. 246-47. In the "Comments" section of the questionnaire, Dr. Lopez remarked as follows: "Limited education, 8th grade. Suffers from PTSD, as a result of a sever abusive situation. Experiences Major Depressive Disorder, Single Episode, Moderate. Little to no family support system. Very poor parenting skills. Questionable intellect." Tr. 248.

In his opinion, the ALJ reviewed Dr. Lopez's responses to the questionnaire (Tr. 44-45), but gave "little weight to the conclusions of Dr. Lopez" because they "are not supported by his treatment notes" and appear contradicted by "multiple statements that the claimant is

---

[6] The questionnaire instructs that a limitation is "marked" where the impairment "seriously affects ability to function." Tr. 246.

'doing fine.'" Tr. 48. The ALJ further determined that the "stated limitations seem based on subjective complaints rather than on objective observations regarding functioning." Tr. 48.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). *See also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight"). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008).

Upon a review of the evidence, the Court finds that "good cause" supports the ALJ's decision to give less than significant or controlling weight to the opinion of Dr. Lopez. The ALJ found that Dr. Lopez's opinion is not supported by his treatment notes. Tr. 48. Indeed, the treatment notes from Dr. Lopez's four periodic and brief assessments[7] of Plaintiff do not lend compelling support for the "marked" limitations he later indicated on the questionnaire. To the extent they are legible, in his treatment notes Dr. Lopez generally described Plaintiff as "neat" or "clean" in appearance, "clear" in thinking, cooperative in behavior, "euthymic" - i.e., "normal" - in mood, and lacking any abnormal movements. Tr. 187, 184, 255, 250. Based on these scant observations in his treatment notes, it is unclear how Dr. Lopez could draw such sweeping conclusions as those contained in the questionnaire he completed.

Nevertheless, Plaintiff contends that Dr. Lopez's treatment notes do support the limitations which he opined. Pl.'s Brief (Doc. #14) at 9. However, Plaintiff cites primarily to the numerous notes made by Plaintiff's non-physician counselor or nurses at SpectraCare. *See, e.g.*, Tr. 181, 183, 185, 186, 253. These records are not signed by Dr. Lopez, and there is no indication in the record that he reviewed them or relied upon them in rendering his opinion. Moreover, these records mostly just reflect Plaintiff's subjective complaints to the counselor and/or nurse about her sleeping problems and/or depression.[8] *See* Tr. 183, 185,

---

[7] According to Plaintiff's "Treatment Plan" at SpectraCare, Plaintiff was to meet with Dr. Lopez for Physician Medical Assessment & Treatment" "every three months for 15 mins." Tr. 192.

[8] In the Court's judgment, wholesale reliance on Plaintiff's subjective statements renders any resulting opinion tenuous at best. Indeed, the ALJ found that Plaintiff is less than

9

188. In some instances, they indicate that Plaintiff demonstrated "Improved" "Progress Toward Goals," was functioning better, had elevated mood, and was attempting to take steps toward self-improvement. *See, e.g.,* Tr. 193, 181. In any event, the records do not reflect the sort of objective, empirical observations that would lend support to Dr. Lopez's opinions about Plaintiff's purportedly "marked" limitations in the functional areas identified on the questionnaire. The value of Dr. Lopez's opinion, if intended as a reasoned judgment based on a history of his treating Plaintiff, is further undercut by Plaintiff's testimony at the hearing that she "does not talk to" Dr. Lopez beyond telling him "if the medicine is working or not." Tr. 12. Considering the brief, occasional, and limited nature of their contacts, it is unclear to the Court how Dr. Lopez could reasonably and reliably opine that Plaintiff suffers "marked" limitations in the functional areas he considered on the questionnaire. Thus, the Court considers the opinion conclusory.

Moreover, Dr. Lopez's opinion does not find substantial support in other parts of the record. Dr. Rankart's Psychiatric Review Technique (Tr. 163-176) and Mental Residual Functional Capacity Assessment (Tr. 177-180), which were based largely on the evaluations of Dr. McKeown (Tr. 150-154) and Dr. Meadows (Tr. 156-160), found only "moderate" limitations, at worst, in various functional areas and opined that Plaintiff has "mild to

---

fully credible with respect her statements about the severity of her impairments and their limiting effects. Tr. 47-48. The Court here notes that the ALJ's finding is buttressed by Plaintiff's own admission that she views "a SSD check as being the answer to all her problems." Tr. 253. The Court finds this statement telling in view of the fact that Plaintiff has never maintained steady employment and apparently began the instant course of seeking disability sometime after being "cut off" from a prior Social Security payment upon reaching the age of eighteen. Tr. 3.

moderate mental limitations for the workplace" and is "[c]apable of simple-task employment." *See* Tr. 173, 175, 177-79. These limitations were incorporated into Plaintiff's RFC by the ALJ. Tr. 46-48. Accordingly, because the Court finds that Dr. Lopez's opinion is conclusory and not supported by his treatment notes or other evidence in the record, substantial evidence supports the ALJ's determination that there exists "good cause" to afford Dr. Lopez's opinion "little weight." *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

### B. Whether the ALJ's ruling comports with SSR 96-8p.

Plaintiff claims that, "despite the ALJ's finding that [Plaintiff] had a severe impairment, his RFC assessment failed to consider the impact of this impairment on functional ability as required by Social Security Ruling 96-8p." Pl.'s Brief (Doc. #14) at 11. Plaintiff further claims that a "thorough review of the ALJ's decision reveals that he failed to transfer the limitations imposed by [Plaintiff's] mental impairments into work-related functions," in violation of SSR 96-8p. *Id.* at 12. Defendant claims that the ALJ complied with pertinent regulations and SSR rulings and Eleventh Circuit case law in rendering Plaintiff's RFC. Def.'s Brief (Doc. #15) at 8.

Social Security Ruling 96-8p describes the procedures to be undertaken in assessing a claimant's RFC. According to SSR 96-8p, the ALJ is required to "address both the remaining exertional and nonexertional capacities of the individual." Non-exertional

capacities, including mental capacities affected by mental impairments, "must be expressed in terms of work-related functions." As an example, SSR 96-8p instructs that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."

In this case, the ALJ determined that Plaintiff retains the RFC to "perform unskilled medium work . . . in a setting where social interaction is casual and moderately limited." Tr. 46. The ALJ reached this RFC determination after incorporating his findings respecting Plaintiff's mental impairments and their effects on Plaintiff's activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. Tr. 45-46. Upon finding only "mild" or "moderate" limitations in those areas, as well as no episodes of decompensation, thus precluding a finding that Plaintiff's mental impairments are of listing-level severity, the ALJ then "translated" his "findings into work-related functions" in his RFC assessment. Thus, the ALJ formulated an RFC which takes into account Plaintiff's mental impairments and their resulting limitations on her nonexertional capacities. Nevertheless, Plaintiff contends that the ALJ "failed to assess the RFC in terms of work-related functions." Pl.'s Brief (Doc. #14) at 12. Plaintiff claims the ALJ "failed to transfer the limitations imposed by [Plaintiff's] mental impairments into work-related functions." *Id.* Plaintiff's argument, therefore, presupposes that the ALJ is required to address every work-

12

related function in terms of Plaintiff's capacity for that discrete function as a result of her mental impairments. However, Plaintiff does not identify any particular work-related function which, it is asserted, her RFC does not encompass. Nor does she present any authority for the proposition that the ALJ is required to address each work-related function in describing RFC.

As noted by Defendant, in an unpublished decision, the Court of Appeals for the Eleventh Circuit has held that an ALJ's failure to "more specific[ally] and explicit[ly]" set forth his findings with respect to a claimant's "functional limitations and work-related abilities on a function-by-function basis" does not run afoul of SSR 96-8p where it is apparent the ALJ did "consider all of the evidence." *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007). *See also Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. 2008) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p. This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis.") (internal citations omitted).

In this case, it is apparent the ALJ considered all of the relevant evidence in reaching a determination as to Plaintiff's RFC. The ALJ meticulously reviewed each piece of medical evidence bearing on Plaintiff's mental impairments and weighed it accordingly. Tr. 43-45. The ALJ also considered Plaintiff's testimony at the hearing. Tr. 47. Although,

13

understandably to Plaintiff's chagrin, the ALJ assigned little or no weight to some evidentiary materials favorable to Plaintiff, *see* Tr. 48, Plaintiff points to no evidence which, it is alleged, was not considered by the ALJ. Only after reviewing all of the available evidence pertaining to Plaintiff's impairments did the ALJ express Plaintiff's RFC in terms of a specific exertional level. Tr. 46-48. Although the ALJ could have addressed Plaintiff's capacity for every work-related function given her mental impairments, governing law and regulations do not require such rote formality provided that it is apparent the ALJ has considered all relevant evidence bearing on Plaintiff's ability to do work-related activities. Accordingly, the ALJ did not fail "to consider the impact of [Plaintiff's mental] impairment on functional ability." Pl.'s Brief (Doc. #14) at 11.

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is supported by substantial evidence and is, therefore, AFFIRMED. A separate judgment will issue.

DONE this 20th day of May, 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE